Roxana Maria **BORCEA, Ciprian Ciuraru; Tihomir Danchev, Atul Kanade, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**CARNIVAL CORPORATION, d/b/a Carnival Cruise Lines, Inc., Defendant.**

**No. 05–22968–CIV.**

United States District Court, S.D. Florida, Miami Division.

Oct. 30, 2006.

Patricia Acosta, Hunton & Williams, Ellen Ross Belfer, Hunton & Williams, Jeffrey W. Gutchess, Hunton & Williams, Thomas Richard Julin, Hunton & Williams, Martin Leonard Steinberg, Hunton & Williams, Miami, FL, for Carnival Corporation, Defendant.

Christopher Fitzgerald Branch, Kozyak, Tropin & Throckmorton, Coral Gables, FL, Thomas A. Tucker Ronzetti, Kozyak Tropin & Throckmorton, Coral Gables, FL, for Atul Kanade, Cipran Ciuraru, Roxana Maria Borcea, Tihomir Danchev, Plaintiffs.

Charles R. Lipcon, Lipcon Margulies & Alsina, Tonya Jean Meister, Lipcon Margulies & Alsina, Miami, FL, for Denislav Cholakov, James Green, Petcu Gabriel, Svilen Slavov, Claimants.

### ORDER APPROVING CLASS ACTION SETTLEMENT AGREEMENT

COOKE, District Judge.

THIS CAUSE came before the Court upon the parties' Joint Motion for Final Approval of Class Action Settlement and Other Relief (DE 65).

THE COURT considered the parties' oral submissions on October 25, 2006, concerning the parties' request that the Court approve the proposed class action settlement. Earlier, on May 4, 2006, the Court had given preliminary approval of the class action settlement, pursuant to Federal Rule of Civil Procedure 23(b)(3). (DE 52 & 53). The Court has carefully considered the parties' written submissions, the evidence and the arguments presented, and the applicable law.

For the reasons that follow, the class action settlement is hereby approved.

## FACTUAL AND PROCEDURAL BACKGROUND

### The Stoycheva Class Action

On March 7, 2005, six former Carnival employees filed a class action against Carnival styled *Stoycheva v. Carnival Corporation*, 05–20644–Civ–Cooke, (S.D.Fla.) on behalf of themselves and the class of approximately fifteen thousand seafaring employees of Carnival. (D.E.1). The complaint alleged that Carnival failed to pay the plaintiffs and a class that the plaintiffs claimed to represent adequate wages in violation of their respective employment agreements and the Seaman's Wage Act, 46 U.S.C. § 10313(f) & (g). *Id.* The *Stoycheva* plaintiffs sought, among other things, compensatory damages in the amount of the allegedly unpaid wages, attorney's fees and costs, penalty wages, and injunctive relief. The plaintiffs also alleged that Carnival manipulated its records of the time worked by the plaintiffs so that they did not accurately reflect the number of hours worked. *Id.*

Carnival asserted multiple defenses against the claims asserted in the March 7, 2005, complaint, including: (a) that the plaintiffs' own employment contracts specified that the plaintiffs were not entitled to overtime wages because they received tips and gratuities in lieu of hourly overtime compensation; (b) some of the claims were barred by the applicable one-year statute of limitations; (c) all of the claims were barred by the doctrine of accord and satisfaction; (d) plaintiffs could not assert a claim for penalty wages under the Seaman's Wage Act because (i) they could not allege that Carnival failed to compensate them in accordance with their employment contracts, (ii) plaintiffs failed to demand wages alleged to be due, (iii) plaintiffs' claims were barred by laches, and. (iv) Carnival had sufficient cause for failing to pay the wages alleged to be due. (D.E.8).

Faced with these defenses, the plaintiffs voluntarily dismissed their complaint, and filed an amended complaint alleging claims for unpaid overtime wages due under Panamanian law, a failure to pay minimum wages due under Bahamian law, and the attendant penalty wages authorized by the Seaman's Wage Act, 46 U.S.C. 10313(f) & (g). (D.E.15). Carnival once again moved to dismiss the amended complaint, raising the same defenses that it had asserted against the initial complaint, as well as additional defenses, including: (a) that the plaintiffs could not assert a claim under Panamanian law because the law specifically allowed another form of compensation in lieu of hourly overtime wages; (b) the plaintiffs could not assert a claim for unpaid minimum wages under Bahamian law because the law on which the plaintiffs relied did not apply to seafarers and the applicable law did not impose minimum wages on maritime employment contracts; (c) the plaintiffs could not assert a claim for penalty wages because they could not establish a breach of a contractual duty to pay the wages alleged to be due, and Carnival had sufficient cause to fail to pay those wages; and (d) the substantive law of Panama applied and it barred class actions. (D.E.28).

On August 3, 2005, this Court dismissed the *Stoycheva* action with prejudice. (D.E.68). Some of the plaintiffs in the *Stoycheva* Action appealed the dismissal of their complaint to the United States Court of Appeals for the Eleventh Circuit, 05–14546–H (11th Cir.). (D.E.69). After Carnival filed its answer brief, and the Bahamian and Panamanian governments filed amicus briefs in support of Carnival's defenses.

### The Borcea Class Action

On October 25, 2005, four additional former Carnival employees filed another action against Carnival styled *Borcea, et al. v. Carnival Corporation d/b/a Carnival Cruise Lines Inc.*, Case No. 05–22968–Civ–Cooke (S.D.Fla.) (the "*Borcea* action"). (D.E.1). This complaint alleged that Carnival failed to pay these plaintiffs and the class they claimed to represent adequate wages in violation of their respective employment agreements, certain foreign laws, and the Seaman's Wage Act, 46 U.S.C. § 10313(f) & (g). The plaintiffs also alleged that Carnival had

manipulated its pay records. The *Borcea* action sought, among other things, compensatory damages in the amount of the allegedly unpaid wages, attorneys' fees and costs, penalty wages, and injunctive relief. *Id.*

The initial *Borcea* complaint was dismissed by the Court *sua sponte* for failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 8. (D.E.8). The plaintiffs then filed an amended complaint that included additional details of the amount of wages they were seeking. The *Borcea* matter was transferred to this Court as a related matter.

Carnival moved to dismiss the amended complaint, raising numerous defenses similar to the ones raised in the *Stoycheva* case. (D.E.20). Carnival also asked the court to stay the action pending appellate review of the order dismissing the *Stoycheva* case, which the Court granted. (D.E.24)

Carnival additionally moved to toll accrual of fines or "penalty wages" authorized under the Seaman's Wage Act, 46 U.S.C. section 10313(f) if a seaman can establish that his employer failed to pay him due wages and the end of a voyage without sufficient cause. (D.E.22). Under their theory of recovery, the penalties under section 10313 had been accruing penalty wages for more than 15,000 class members for a number of years, exposing Carnival to *substantial* penalties. The Court granted Carnival's motion and tolled the accrual of any penalty wages against Carnival. (D.E.50).

### The Mandatory Mediation

On August 30, 2005, the Eleventh Circuit Court of Appeals issued a Notice of In-Person mediation, requiring that the parties in *Stoycheva* action attend mediation on October 6, 2005. (Ex. 1). The mediation conference was later re-scheduled to take place on Friday, January 27, 2006, before Joe N. Unger, a certified Eleventh Circuit mediator. (Ex. 2). Although the parties were unable to reach a settlement that day, the intensive negotiations that took place on January 27, 2006, allowed the parties to significantly narrow their differences and clear the way for further negotiations during the course of three additional months.

### The Class Action Settlement Agreement

On May 1, 2006, the parties and their counsel executed the Class Action Settlement Agreement. (Ex. 3). The settlement agreement resolves all wage claims that were filed or could have been filed in the *Stoycheva* or the *Borcea* actions on a class-wide basis. The named plaintiffs in *Stoycheva* and the named plaintiffs in this case are the representative plaintiffs listed in the settlement agreement. *See* (Ex. 3 ¶ 1G). The settlement class, agreed upon by the parties and certified by this Court for settlement purposes only, is defined as:

> All former and current, non-P.O.E.A. seafarer-employees, who have worked or are working for and aboard various ships owned by Defendant Carnival at any time from November 16, 2001, through the date that notice is first provided to the class for class certification and who Carnival has (i) failed to pay adequate wages due under contract or law or (ii) failed to pay penalties for failure to pay adequate wages due under contract or law. "Seafarer-employees" shall not include Carnival's corporate officers or corporate directors. An officer or director of a Carnival vessel is not a corporate officer or corporate director solely by virtue of his or her position on a vessel.

(Ex. 3).

The parties agreed, among other things, to the following settlement terms:

#### a. Monetary Consideration

It was agreed that Carnival would deposit $6,250,000 into a settlement fund to be distributed among all the class members who file a valid and timely claim. For a claim to be valid, the claimant need only provide a Carnival ID number, the claimant's permanent residence address, the claimant's permanent telephone number, the name of one or more Carnival vessels on which the claimant worked, the dates that the claimant served each Carnival vessel listed, and the position that the claimant held on each Carnival vessel. (Ex. 3, ¶ 5B). No claim, however, will be declared invalid for lack of information, unless Carnival cannot identify

the claimant from the information that the claimant can provide. *Id.*

Each claimant who files a valid and timely proof of claim would be entitled to be paid an amount equal to (1) the number of months the claimant worked from November 16, 2001, through the date that Carnival first published notice of conditional certification of the class, divided by (2) the total number of months worked by all Carnival employees on Carnival's vessels during that same period, as determined by Carnival's position head-counts, multiplied by, (3) the Net Settlement Fund. *See* (Ex. 3, ¶ 5D).

If, however, the total award recovered by all valid claimants is less than 67% of the net settlement fund, each valid claim shall be increased pro rata, to the extent of 67% of the settlement fund. *Id.* This guarantees that at least 67% of the fund will be distributed to the class regardless of the number of claims actually received. The remainder of the settlement fund, if any, will revert to Carnival.

### b. *Carnival's Agreement to Pay Notice & Administration Cost*

Carnival has also agreed to pay all costs of notice and claims administration, which Carnival estimates will exceed $146,350. This is an additional benefit for the class negotiated by class counsel because otherwise the cost of this undertaking would have been deducted from the settlement fund.

### c. *Modifications to Carnival's Payment System*

Prior to the settlement, Carnival did not have a procedure in place whereby seafarers could timely access time records reflecting the number of hours they had worked for a completed payroll period. It was agreed, therefore, that Carnival would make available to each employee upon written request of such employee, a copy of Carnival's Fun Time records reflecting the number of hours worked by such employee during the preceding two-week period. (Ex. 3¶ 11.A). These records will be available to the employee as early as two days after the close of Carnival's payroll cycle and shall remain available for thirty days thereafter. *Id.* If an employee disembarks the ship prior to the close of Carnival's payroll cycle, Carnival has agreed to send to such employee a copy of his or her final Fun Time record to an electronic or physical address designated by the employee, if requested. *Id.* at ¶ 11.B.

Carnival also agreed to modify its employment agreements to include language specifically stating that the payment of tips and gratuities, bonus payments, quality appreciation pay, special event and discretionary payments serve as a substitute and in lieu of, extra-overtime wages. *Id.* at ¶ 11.C.

The foregoing procedures and modifications will have the effect of making Carnival's Payment System more accessible and transparent to its employees.

### d. *The Release*

The parties' releases are intended to ensure that all the wage claims against Carnival will be extinguished. To resolve any and all outstanding wage disputes between the parties, each class member who joins in the settlement agrees to release Carnival from any claim for failure to pay adequate wages, as that term is defined in the settlement agreement, earned through the date that Carnival first publishes notices of the settlement. (Ex. 3, ¶ 12.A) In addition, the class members have agreed to waive future wage claims for punitive damages, exemplary damages, statutory damages and the right to bring a class or group action in court or in arbitration. *Id.* at ¶ 12.A(3) & (4).

### e. *The Grievance & Arbitration Procedure*

To diminish the likelihood that a seafarer would end a voyage without being paid his or her full wages, the parties also agreed to a grievance and arbitration procedure that would ensure that future wage disputes be addressed promptly and effectively, without the need for expensive litigation often impracticable for a seafarer in the instant class. The procedure is also intended to eliminate the risk that the severe daily penalties authorized by the Seaman's Wage Act will run for extensive periods of time against Carnival without Carnival having an opportunity to

evaluate a potential claim and resolve any valid claim. Therefore, it has been agreed that each future wage claim against Carnival must be first brought through Carnival's grievance procedure within 60 days of the date on which the employee has notice of a claim that Carnival should have paid the employee, but failed to do so. An employee is deemed to have notice of a failure to pay adequate wages on the date in which the employee receives his or her paycheck, provided that the employee has had available to him or her access to Fun Time or other comparable record. (Ex. 3, ¶ 12.D(1)). Carnival will remind the seafarers of this requirement by including specific language in each employee paycheck advising the employee of their right to dispute their wages, and by including a written description of the grievance procedure both in the materials given to each employee at the commencement of service with Carnival and on Carnival's intranet website. *Id.*

It is intended that most disputes will be resolved through the grievance procedure, but if the claimant disputes the results obtained through this procedure, the claimant will be entitled to proceed through arbitration. All the claimant has to do to proceed through arbitration is pay a small fee—the lesser of $25 or 10% of the outstanding disputed claim. (Ex. 3, ¶ 12.D(3)). Carnival will be responsible for payment all other arbitration fees and costs. *Id.*

#### f. *The Attorneys' Fees & Other Payments*

It was agreed that plaintiffs' counsel may apply to the district court for an award of attorneys' fees and expenses that do not exceed thirty percent (30%) of the $6,250,000 settlement fund. (Ex. 3, ¶ 3.B(2)).

It was agreed that plaintiffs' counsel may apply to the district court for an award of $7,500 to each of the class representative plaintiffs who sign the agreement and Carnival reserves the right to oppose such a request.

#### *The Preliminary Approval of The Settlement Agreement & Notice to The Class*

On May 4, 2006, this Court entered an order granting, among other things, prelimi-

nary approval of the settlement agreement, lifting a stay of the *Borcea* action to authorize the filing of the second amended complaint, conditionally certifying the class set forth in that complaint for settlement purposes only, appointing a claims administrator, authorizing distribution of the settlement notice, and requiring Carnival to pay for the fees and expenses of the claims administrator. (Ex. 4).

Pursuant to that order, the parties jointly selected Garden City Group, Inc. to administer the notice and claims process. *See* Declaration of Cyrus Marfatia in Support of Joint Motion for Approval of Class Action Settlement ¶ 4; Declaration of Patrick M. Passarella ¶ 3.

By June 16, 2006, notice of the class action settlement was mailed to approximately 41,978 foreign class members throughout the world or otherwise distributed to the seafarers on board Carnivals vessels. *See* Passarella Decl. ¶¶ 11–13; Marfatia Decl. ¶ 7.

The notice provided sufficiently relevant information about the settlement, including (a) notice that a class action settlement had been reached; (b) a definition of the class; (c) a summary of the settlement benefits; (d) a brief description of the case; (e) a brief description of the reason for the settlement; (f) the amount that the plaintiffs' attorney's could recover in fees and costs, (g) the options available to the class members; (h) the deadlines by which the class members needed to act; (i) and the date on which the fairness hearing was scheduled. The notice specifically stated the information provided therein was "only an abbreviated summary of the proposed settlement and release" and that in order to receive additional information, the class member could contact the claims administrator or each of the three law firms representing the class. *See* (Ex. 5). The notice was published in the English language because Carnival has a requirement that its crew be able to communicate in English. *See* Marfatia Dec. ¶ 9.

By June 3, 2006, Carnival had, at its sole expense, published the notice of the class action settlement twice, five days apart, in

the Miami Herald and The Los Angeles Times. *See* Marfatia Dec. ¶ 8.

By June 11, 2006, Carnival, at its sole expense, published the notice to the class by including it in its pay materials given to shipboard employees. *See* Marfatia Dec. ¶ 7.

In addition to these efforts to disseminate class notice, the administrator also established a website—www.borceaclass settlement.com—that allowed anyone to download the notice and the claims form. The administrator also established a toll-free number to enable the settlement class members to request copies of the class notice and receive general information regarding the settlement. For those individuals who do not reside in the United States or Canada, the claims administrator established another telephone line that the settlement class members could call to request a claims form or the notice, or simply leave a message with a callback number. Carnival agreed to reimburse class members for long-distance telephone calls associated with inquiries to the claims administrator. *See* Passarella Decl. ¶ 15.

By the end of the notice and claims process—September 15, 2006—the website's homepage had been accessed approximately 4,079 times by 3,058 unique visitors, and 2,421 requests have been made to view and/or download the Claim Form. *See* Passarella Decl. ¶ 14. Moreover, the administrator received 1,468 telephone calls to the toll-free number, 597 messages, and 36 requests for claims packets. *Id.*

By the end of the notice and claims process, the claims administrator had received approximately 10,667 claims, a significant claims rate given that most class members reside in foreign countries or are no longer employed by Carnival.

### Requests for Exclusion, Objections & Amendment to the Settlement Agreement

Only seventeen requests for exclusion were received. *See* Passarella Decl. ¶ 22.

Moreover, only eight objections to the settlement agreement—constituting a mere 0.02% of the response—were filed. Five of the objections were filed by individual seafarers raising the same exact allegations. One was submitted untimely by a group of seafarers claiming that they worked for Carnival outside the class period, but should nonetheless be made part of the class. The other two were filed by maritime lawyers on behalf of various seafarers. The objections focused primarily on the mandatory arbitration requirement for raising future wage claims. The parties have since resolved these two objections by agreeing to modify their settlement agreement to provide as follow:

> The grievance and arbitration clauses contained in Section 12 D of the Class Action Settlement Agreement in the case of Borcea v. Carnival Corporation, Case No. 05–22968–CIV–Cooke/Klein, do not apply to crewmember personal injury, death, Jones Act, unseaworthiness, and/or maintenance and/or cure claims, or to individual, non-class, non-collective wage claims for back pay (but excluding claims for penalty wages) coupled with or asserted along with such crewmember personal injury, death, Jones Act, unseaworthiness, and/or maintenance and/or cure claims.

*See* (Ex. 6). This amendment addressed the issues raised by the two law firms, and therefore, the objections were withdrawn. *Id.*

### DISCUSSION

**I. *Standard for Approval of Class Action Settlement***

 There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *Bennett v. Behring Corp.*, 737 F.2d 982 (11th Cir.1984). This action was settled prior to certification. A class may be certified "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Woodward v. NOR–AM Chem. Co.*, 1996 WL 1063670 * 14 (S.D.Al. 1996) (citing *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 173–78 (5th Cir.1979)). In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), the Supreme Court held that because a settlement class action obviates a

trial, the district court judge deciding whether to certify a settlement class action "need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(e)(3).

Regardless of whether a class is certified for settlement or for trial, the Court must find that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class." Fed. R.Civ.P. 23(a). The proposed class must also meet the requirements of one of the three class types found in Rule 23(b). In this case, the parties sought certification under Rule 23(b)(3), on the basis that "the questions of law or fact common to the members of the class predominate" over individual issues of law or fact that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The Court found that the Rule 23(a) and (b) standards were satisfied, the settlement class was preliminarily certified, and notice to putative members of the proposed class was required. *See* DE 53.

■ Under Federal Rule of Civil Procedure 23(e), "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide standards for approval, these standards have been articulated time and time again in reported decisions. A proposed settlement action should be approved as long as it is "fair, adequate and reasonable and it is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir.1984).

■ A seaman's settlement and release must be carefully scrutinized. *Garrett v. Moore–McCormack Co.*, 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942); *Wink v. Rowan Drilling Co.*, 611 F.2d 98, 100 (5th Cir.1980). This is because:

[Seamen] are emphatically wards of the admiralty; and though not technically incapable of entering into a valid contract, they are treated in the same manner, as courts of equity are accustomed to treat young heirs, dealing with their expectancies, wards with their guardians, and cestuis que trust with their trustees.... If there is any undue inequality in the terms, any disproportion in the bargain, any sacrifice of rights on one side, which are not compensated by extraordinary benefits on the other, the judicial interpretation of the transaction, is that the bargain is unjust and unreasonable, that advantage has been taken of the situation of the weaker party, and that pro tanto the bargain ought to be set aside as inequitable ... And on every occasion the court expects to be satisfied, that the compensation for every material alteration is entirely adequate to the diminution of right or privilege on the part of the seamen.

*Garrett*, 317 U.S. at 246–47, 63 S.Ct. 246. A settlement or release will be considered valid if it is executed freely, without deception or coercion, and if it was made by the seaman with full understanding of his rights. *Garrett*, 317 U.S. at 252, 63 S.Ct. 246. Factors which may be relevant to an appraisal of a seaman's understanding of his rights before signing a release include: (1) the nature of the legal advice available to the seaman at the time of signing the release; (2) the adequacy of the consideration; (3) whether the parties negotiated at arm's length and in good faith; (4) and whether there was the appearance of fraud or coercion. *See Simpson v. Lykes Bros.*, 22 F.3d 601 (5th Cir.1994). Another significant factor is whether the seaman was represented by counsel and not coerced into signing a release by his employer.

II. *Application of the Legal Standards*

A. *The Settlement is Fair, Adequate and Reasonable*

■ In determining whether a proposed class action settlement is fair, adequate and reasonable, the Court should consider six factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the

point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett,* 737 F.2d at 986. In addition, the judgment of experienced counsel is relevant to approval. *See, e.g., Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir.1977) (the trial court is "entitled to rely on the judgment of experienced counsel for the parties" in evaluating a settlement); *see also Warren v. City of Tampa,* 693 F.Supp. 1051, 1055 (M.D.Fla.1988); *In re Motorsports,* 112 F.Sup.2d 1329, 1333 (N.D.Ga.2000); *Meyer v. Citizens and Southern Nat'l Bank,* 677 F.Supp. 1196, 1201 (M.D.Ga.1988). These factors strongly support approval of this settlement.

### 1. *Likelihood of Success at Trial & Range of Potential Recovery*

■ First, the benefit this settlement provides to the class should be compared with the likely recovery for the class at trial. *Cotton,* 559 F.2d at 1330. This question implicates the first three of the *Bennett* factors, which are closely related. The Court's role is not to engage in a claim-by-claim, dollar by dollar evaluation, but to evaluate the proposed settlement in its totality. *See Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106–07 (2d Cir.2005). Moreover, the existence of strong defenses to the claims presented makes the possibility of a low recovery quite conceivable. *See, e.g., Bennett,* 737 F.2d at 986; *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 542 (S.D.Fla. 1988) ("a settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of potential recovery").

First, the *Stoycheva* case had already been dismissed with prejudice. The class would have faced the significant risk of this dismissal being upheld on appeal. The class would also have to undertake significant risks by proceeding further with the *Borcea* litigation. For instance, the class might not prevail on the threshold issue of class certification, either initially or on appeal. Even if the class

were certified, would still face the risk of losing the case on summary judgment or at trial. Carnival would have relied on the opinions of legal experts establishing that Panamanian and Bahamian law imposed no duty on Carnival to pay the wages claimed by the plaintiffs. Those opinions had already been rendered at the motion to dismiss stage and on appeal of the *Stoycheva* case. Carnival would have also relied on pay records similar to the ones attached to its motion to dismiss the *Stoycheva* case which demonstrated that plaintiffs received compensation well in excess of what they were claiming. To rebut the evidence, the plaintiffs would have been required to show that Carnival had manipulated the records and that the plaintiffs, in fact, had worked the hours claimed without receiving adequate compensation.

Even assuming that the plaintiffs could show that Carnival failed to pay them wages at the end of their voyages, it would have been difficult for them to establish a violation of the Seaman's Wage Act at trial. Carnival has a strong defenses, including the existence of sufficient cause for failing to pay the wages and the fact that none of the plaintiffs ever complained to Carnival about the adequacy of their wages. Thus, even though the plaintiffs believe, based on reasoned investigation, that they have meritorious claims, the strong defenses that Carnival has and would assert, significantly diminish the plaintiffs' likelihood of success at trial, and weighs in favor of settlement.

With respect to monetary relief, Carnival has agreed to pay $6,250,000 to the class. Under the formula for distribution to class members in this case, no participating class member will be left uncompensated. The approach in this case significantly lessens the burden on members of the class, who do not have to file and substantiate an individual claim. The settlement agreement proposes a fair and reasonable means for allocating settlement payments. Under this formula, a claimant will be paid an amount equal to the number of months the claimant worked for Carnival during the class period, divided by the total number of months worked by all Carnival employees during that period, mul-

tiplied by the net settlement fund. This formula is reasonable because it is based on the time worked at Carnival, and thus avoids arbitrary allocation of the funds. Irrespective of the number of claims received, no less than 67% of the fund must be distributed to all valid claimants on a pro rata basis. In addition to the monetary benefits, Carnival has agreed to make changes to its payment procedures to ensure that future wage concerns can be addressed efficiently and promptly. These benefits, when viewed against the background of all of the uncertainties, including the reasonable possibility that plaintiffs will not recover any benefits if they proceeded to trial, weigh in favor of approval of the settlement.

### 2. *The Complexity, Expense and Duration of Further Litigation*

■ The class obtained a significant benefit from the relatively rapid litigation and settlement of this case. "The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise of the mere possibility of relief in the future, after protracted and extensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D.La.1993).

If this case were to go to trial, significant trial expenses consisting of the payment of expert witnesses in foreign law would be incurred. Experts in the field of technology, human resources and maritime labor might have been necessary to address issues with Carnival's pay system. Most, if not all of the class members reside in foreign countries throughout the world. Their attendance at trial, therefore, would have been costly and difficult to coordinate. A substantial time would have been necessary to try the case, given the issues and the complexities of the claims. After conclusion of the trial, the case likely would have continued with appellate proceedings. "Complex litigation ... 'can occupy the court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR-*

*AM Chem. Co.*, 1996 WL 1063670 *21 (S.D.Ala.1996) (quoting *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir.1992)). Thus, "[s]ettlement will alleviate the need for judicial exploration of these complex subjects, reduce litigation cost, and eliminate the significant risk that individual claimants might recover nothing." *Id.* With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a resolution by way of settlement strongly weigh in favor of the settlement.

### 3. *Substance & Amount of Opposition to the Settlement*

■ Both the substance and number of objections to this settlement are small. Eight objections have been submitted. Two were withdrawn after the parties' amended their settlement agreement, leaving six objections. Five of these objections are identical and were filed by individual seafarers *pro se* arguing that the class action settlement should not be approved because: (a) their claims should be individually adjudicated; (b) they worked on board non Carnival vessels and any claims for work performed on those vessels would be extinguished by the release; (c) the numerosity of the class should not prejudice the possibility of recovery by individual class members, and (d) the laws of the Bahamas were violated. The first allegation only demonstrates that early settlement on a class basis is in fact appropriate because it avoids the complexities of deciding individual claims. The second allegation disregards the fact that only claims against Carnival are at issue in the proceedings. The third and fourth allegations ignore that numerosity weighs in favor of settlement, and furthermore, any individual wishing to have his or her claim adjudicated individually is free to opt out the settlement agreement and proceed individually to assert any violations of Bahamian law. It should be noted, moreover, that none of these five objectors has requested to be excluded from the settlement agreement. To the contrary, they have all indicated that they wish to receive benefits from the settlement fund if the settlement agreement were to be approved.

The remaining objection was submitted by a group of seafarers after the claims period ended and was not filed with the court. They argue that the class period is unfair as it is confined to the period of November 16, 2001 forward, and hence excludes those persons claiming injury prior to November 16, 2001. The Court finds that the objection is time-barred and in addition that it lacks merit because a four-year class period is consistent with the statute of limitations and the period covered by claims before the Court. Accordingly, this objection does not warrant rejection of the class action settlement or undermine its fundamental fairness, reasonableness and adequacy.

### 4. *The Stage of Litigation at Which the Settlement was Reached*

In this case, the settlement was not achieved until both parties had engaged in extensive investigation of the claims and defenses and had a reasonable opportunity to explore the risks involved. Before the *Stoycheva* action was dismissed at the motion to dismiss stage of the proceedings, Carnival produced documents to the plaintiffs and filed thousands of additional documents along with its various motions and briefs both in the district court and on appeal. Moreover, class counsel had familiarity with the practices that form the basis for Carnival's payment and record keeping system and were in possession of statements of their own clients as to Carnival's wage system as well as numerous records gathered by their clients. Thus, the stage of the proceedings at which the settlement was reached was sufficient to enable class counsel to fully investigate the strength of the claims and reasonably evaluate the risks and expenses facing the parties if a settlement were not reached.

### 5. *Additional Factors*

"The court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982). The Court is convinced that the settlement agreement is the product of good-faith, arm's length negotiations rather than collusion or overreaching by the parties. The Court is also satisfied that the settlement agreement was negotiated and executed knowingly, freely, and without coercion. *Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 248, 63 S.Ct. 246, 87 L.Ed. 239 (1942).

The parties settled the case after attending court-mandated mediation before a certified mediator. Throughout the litigation and the appeal of the actions, the class plaintiffs were represented by experienced maritime and class counsel who secured expert witnesses and worked diligently to present the best case for the plaintiffs. Although the parties were unable to reach a settlement during the formal mediation session, the parties were able to significantly narrow their differences and clear the way for further negotiations during the course the months following. This Court has presided over the *Borcea* and the *Stoycheva* cases. There is no doubt that before a settlement was reached, the cases have been adversarial, featuring a high level of contention between the parties throughout the litigation. After the Court dismissed the complaint in the *Stoycheva* case, plaintiffs' counsel appealed the dismissal to the Eleventh Circuit and had fully briefed the appeal before the settlement was reached.

Moreover, the class counsel were able to secure substantial benefits to the certified seafarers class, and the Court has found no evidence of fraud or coercion. In addition, there is no evidence of intimidation or retaliation. Carnival has submitted evidence of its efforts to inform the class members who are currently employed by Carnival that no class member will be retaliated against for participating in the class action settlement. *See* Marfatia Decl. ¶ 5. Given the qualifications of class counsel, the record prior to settlement and the substantial benefits conferred upon the class, the Court concludes that the settlement agreement is the product of arm's length negotiations and was executed know-

ingly, freely and without coercion or deception.

### B. *Class Certification*

■ Although the parties have consented to certification of a settlement class in this case, the Court must independently determine whether this case meets the requirements for class certification under Federal Rule of Civil Procedure 23(a) and 23(b), even if the certification is only for settlement purposes. *Amchem Prods. v. Windsor,* 521 U.S. 591, 621, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Certification of the class is appropriate in this case for the following reasons:

*Numerosity.* The members of the class are so numerous and geographically dispersed throughout the United States and abroad that joinder of all class members is impracticable. The class consists of approximately forty two thousand (42,000) seafarers, whose payroll records, work time records, and work schedules are maintained by Carnival.

*Commonality.* There appear to be questions of law and fact that are common to the claims of plaintiffs and the entire class. Among these common questions are the following:

a. Whether the Defendant has engaged in a pattern or practice of requiring uncompensated work?

b. Whether Carnival failed to pay the seaman adequate wages for hours worked?

c. Whether Carnival's failure to pay the seamen adequate wages was made without sufficient cause?

d. Whether the seamen are entitled to penalty wages under 16 U.S.C. § 10313(g)?

*Typicality.* Plaintiffs' claims appear to be typical of the claims of the class in that each seaman is claiming a failure by Carnival to pay adequate wages and penalty wages due to Carnival's failure to pay them in accordance with contract or law, and also is claiming damages as a result of Carnival's actions.

*Adequacy of Representation.* Plaintiffs appear to be adequate representatives of the class and will fairly and adequately protect the interests of the class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature. There is no apparent hostility between plaintiffs and the unnamed class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. To prosecute this case, plaintiffs have chosen the law firms Kozyak, Tropin & Throckmorton, P.A., Julio J. Ayala, P.A., Crewmember and Maritime Advocacy Center, P.A., and Downs, Brill & Whitehead, P.A., and who collectively are law firms with vast experience in maritime and class action litigation. These law firms have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

■ *Predominance.* The questions of law or fact common to the claims of plaintiffs and of each class member predominate over any questions of law or fact affecting only individual members of the class. All claims by named plaintiffs and unnamed class members are based on the failure to pay adequate wages or the failure to pay penalties for non-payment of wages or other compensation. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there are some individualized damages. As a result, when determining whether common questions predominate, courts focus on the liability issue and if the liability issue is common to the class, as in the case at bar, common questions are held to predominate over individual questions. Since all claims by the plaintiffs and the class members are based on the same alleged "across the board" failure to pay adequate wages, other compensation, or penalties, the predominance requirement of Fed.R.Civ.P. 23(b)(3) is satisfied.

*Superiority.* A class action is superior to thousands of individual actions, in part, because of the non-exhaustive factors listed below:

a. Joinder of all class members would create extreme hardship and inconvenience for the affected seafarers because of their immense geographical dispersion. Class members reside in the United States, Central and South

America, Europe, Asia, India and Africa.

b. There are no known individual class members who are interested in individually controlling the prosecution of separate actions.

c. The interests of justice will be well served by resolving the common disputes of potential class members in one forum.

d. Individual suits would not be cost effective, especially in light of the fact that many of the Class members are foreign nationals.

e. The action is manageable as a class action; individual lawsuits are not economically sustainable as individual actions.

See *Bolanos v. Norwegian Cruise Lines,* 212 F.R.D. 144 (S.D.N.Y.2002). This certification is for settlement purposes only, and shall not constitute, nor be construed as, evidence and/or an admission on the part of Carnival that this action, or any other proposed or certified class action, meets the requirements of Rule 23, or otherwise is appropriate for class treatment pursuant to the Rules of Civil Procedure for litigation purposes. This order is without prejudice to the rights of Carnival to oppose class certification in any other class action, or for that matter, in this action, if for any reason this order cannot be implemented. See *Turner v. General Electric Co.,* 2006 WL 2620275 *5 (M.D.Fla.2006).

### C. *Adequacy of the Notice*

 To satisfy due process, the notice "must be sufficiently informative and give sufficient opportunity for response." *Kyriazi v. Western Elec. Co.,* 647 F.2d 388, 395 (3d Cir.1981); *see also Twigg v. Sears, Roebuck & Co.,* 153 F.3d 1222 (11th Cir.1998). The Court finds that the notice it previously approved for distribution to the class members contained sufficient information to satisfy the requirements of Federal Rule of Civil Procedure 23(e)(3). The notice contains clear and concise information about the settlement, including: (a) that a class action settlement had been reached; (b) a definition of the class; (c) a summary of the settlement benefits; (d) a brief description of the case; (e) a brief description of the reason for the settlement; (f) the amount that the plaintiffs' attorney's could recover in fees and costs, (g) the options available to the class members; (h) the deadlines by which the class members needed to act, (i) and the date on which the fairness hearing was scheduled. The notice further explained that the information provided therein was "only an abbreviated summary of the proposed settlement and release," and that in order to receive additional information, the class member could contact the claims administrator or each of the three law firms representing the class. The notice was made available to the class members through various mediums; it was mailed to the individual members, it was distributed onboard Carnival's various ships, it was published in newspapers of general circulation, and it was posted on websites. The class members received over ninety days to submit their claims and were required to submit only the most basic information about their employment with Carnival. Under these circumstances, the Court finds that the notice fairly apprises the prospective class members of the proposed settlement terms and of the options that are open to them.

### *FINAL JUDGMENT*

For the foregoing reasons, the Court hereby

ORDERS AND ADJUDGES as follows

1. The Joint Motion for Approval of Class Action Settlement (DE 65) is GRANTED. The Class Action Settlement Agreement dated May 1, 2006, as amended, is hereby approved in its entirety as fundamentally fair, adequate and reasonable, and not the product of collusion among the parties.

2. The Court finally certifies the following class for settlement purposes only under Federal Rule of Civil Procedure 23(b)(3):

All former and current, non-P.O.E.A. seafarer-employees, who have worked or are working for and aboard various ships owned by Defendant Carnival at any time from November 16, 2001, through the date that notice is first provided to the class for class certification and who Carnival has (i) failed to pay adequate wages due under

contract or law or (ii) failed to pay penalties for failure to pay adequate wages due under contract or law. "Seafarer-employees" shall not include Carnival's corporate officers or corporate directors. An officer or director of a Carnival vessel is not a corporate officer or corporate director solely by virtue of his or her position on a vessel. Carnival's vessels, include, but are not limited to, the following:

(1) Carnival Valor

(2) Carnival Miracle

(3) Carnival Glory

(4) Carnival Conquest

(5) Carnival Legend

(6) Carnival Liberty

(7) Carnival Pride

(8) Carnival Spirit

(9) Carnival Victory

(10) Carnival Triumph

(11) Paradise

(12) Elation

(13) Carnival Destiny

(14) Inspiration

(15) Imagination

(16) Fascination

(17) Sensation

(18) Ecstasy

(19) Fantasy

(20) Celebration

(21) Holiday

(22) Jubilee

(23) Tropicale

(24) Other ships owned or operated by Carnival from November 16, 2001 through the date that notice is first provided to the class of class certification.

3. The second amended complaint is dismissed with prejudice. However, as to those persons identified on Exhibit A, attached hereto, who have validly and timely requested exclusion from the Settlement Class, the Court dismisses the action without prejudice.

4. The Court retains jurisdiction to enforce the terms of the settlement agreement, and to rule on the pending motion for attorney's fees and expenses, and payment of service awards, which has been referred to Magistrate Judge Brown; the pending motion for attorneys' fees and expenses and for payment of service awards shall not disturb or affect this Final Judgment, and shall be considered separate and apart from this judgment.

5. All members of the class are enjoined from prosecuting any claims released by the settlement agreement; this injunction shall not apply to individual claims of settlement class members who timely excluded themselves from the settlement in the manner contemplated by the settlement agreement.

6. Each of the class members shall have fully and finally released, remised, acquitted, satisfied and discharged all claims against Carnival and its parents, subsidiaries, affiliates, officers, directors, employees, agents and vessels for failure to pay adequate wages, as defined in the settlement agreement, earned from November 16, 2001 through June 3, 2006, the date that Carnival first published notice of the settlement. The released claims include, without limitation, any and all claims of any kind that have been or could have been asserted in the *Stoycheva* action, the *Borcea* action—including claims asserted in the second amended complaint— or the *Stoycheva* appeal, including claims under federal or state law, Panamanian or Bahamian law, or the law of any other country. This release does not apply for breach of the settlement agreement, if it were to occur. The definitions in the settlement agreement, and the terms and conditions contained therein are incorporated by reference into this Final Judgment.

## EXHIBIT A

### Opt Out/Exclusion Request List

1. Leighton Harris, Brooklyn, NY

2. Kamil Mawe, Sopot, Poland

3. Katarina Veselovska, Ruzomberok, Slovakia

4. Lilia Astafyeva, Mariupol, Ukrane

5. Nicolae Iosif Gologan

6. Peta Lyn Heydenrych, W.A. Australia

7. Jelena Kocevski, Bergamo, Italy

8. Salvatore Mangraviti, Genova, Italy

EXHIBIT A—Continued

9. Mirela Millinkovic, Susak, Croatia

10. Fiona Moore, Winthrop, Western Australia

11. Sergio Mortola

12. Daniel Santos, San Salvador, El Salvador

13. Shawna Klassen–Roth, Vernon, Canada

14. Waldermar Sciuba, Gdarts, Poland

15. Rajesh Shetty, Mumbai, India

16. Christine Van Kleef

17. Jorge Rubiano Garcia, Bogota, Columbia