William WATERS, Linda Bartholomew, individually, and on behalf of all those similarly situated, Plaintiffs-Appellees,

v.

INTERNATIONAL PRECIOUS METALS CORPORATION, MultiVest, Incorporated, et al., Defendants-Appellants.

No. 97-5074.

United States Court of Appeals,

Eleventh Circuit.

Sept. 30, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No.90-6863-CV-UUB), Ursula Ungaro-Benages, Judge.

Before TJOFLAT and BIRCH, Circuit Judges, and BRIGHT[*], Senior Circuit Judge.

BIRCH, Circuit Judge:

In this class action, customers of the commodity futures brokerage firm, MultiVest Options, Inc. ("MOI"), brought suit against the firm and its brokers, alleging that the defendants engaged in a scheme to defraud customers by soliciting and stimulating excessive trading in commodities options. James Grosfeld, as owner of MOI's parent company, MultiVest, Inc., is the primary defendant in the case, as MultiVest, Inc. is substantially insolvent.

After seven years of extremely contentious litigation and five months of trial, the parties agreed to a settlement prior to the scheduled date of closing arguments to the jury.[1] The settlement created a $40 million fund to pay claims of class members and the fees and expenses of the plaintiffs' attorneys. The fund was "reversionary," meaning that any unclaimed amounts would revert to defendant Grosfeld, the sole source of funding for the settlement. Defendants now argue that (1) the district court's award of $13.3 million in fees to the plaintiffs' attorneys was an abuse of discretion, (2) they are not prohibited from challenging the fee

---

[*]Honorable Myron H. Bright, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The merits of the underlying class action, notwithstanding the energy devoted to those topics by counsel, are not at issue in this appeal.

award even though the settlement agreement contained a "clear sailing" provision whereby defendants agreed not to challenge the fee award application, (3) the district court's order finding that plaintiffs' counsels' fee award is assignable is reversible error, and (4) that the district court's approval of plaintiffs' attorneys' expense request was an abuse of discretion. We address each of these issues in turn.

## I. FEE AWARD

On the eve of closing arguments, the parties reached a settlement stipulation and presented the agreement to the district court. In pertinent part, the settlement provided that defendant Grosfeld would provide the money to fund a settlement of $40 million with which to satisfy the claims of the plaintiff class. The fund would consist in part of cash payments and in part promissory notes. In addition, the stipulation provided that any money not claimed by the plaintiff class or used to pay out fees and expenses would revert to defendant Grosfeld. *See* R31-1371, § 6.2(e), at 43.

The stipulation also provided that plaintiffs' class counsel would apply for attorneys' fees "in an amount not to exceed 33-1/3% of the Settlement Fund plus their costs and expenses." *Id.,* § 7.1, at 54-55.[2] Finally, the stipulation included a "clear-sailing" agreement which provided that "Defendants will not directly or indirectly oppose Plaintiff's Class Counsel of Record's application for fees and expenses or compensation of the Representative Plaintiffs." *Id.* at 55.[3] The district court conducted numerous hearings and conferences among the parties on the provisions of the settlement agreement. On January 31, 1997, the district court held a hearing in open court on the pending motion for preliminary approval of the stipulation of settlement. The

---

[2]Under the agreement, "settlement fund" is defined as "the sum of the cash and aggregate initial principal amount of the Master Promissory Note to be delivered to the Settlement Administrator pursuant to § 2.2 of this Stipulation." R31-1371, § 1.36, at 15. Section 2.2 provides that: "Defendants shall cause James Grosfeld to deposit the Settlement Fund in the amount of $40,000,000 by delivery actually made to the Settlement Administrator, contemporaneously with the entry of an order by the United States District Court for the Southern District of Florida preliminarily approving this Stipulation." *Id.,* § 2.2, at 17.

[3]Such agreements are sometimes included in class action settlements so that defendants have a more definite idea of their total exposure. *See Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 520 n. 1 (1st Cir.1991) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-settling court so long as the award falls beneath a negotiated ceiling.").

court gave preliminary approval and dismissed the jury. The final fairness hearing was held on March 31, 1997. The district court approved the settlement and awarded plaintiff's class counsel $13.3 million in attorneys' fees. *See* R132-1518-94. The court postponed consideration of expenses and asked the plaintiffs' counsel to provide additional documentation. After two additional conferences on April 25 and April 28, 1997, the district court awarded plaintiffs' class counsel $2,400,204 in expenses. *See* R35-1543-2.

We review a district court's award of attorneys' fees for abuse of discretion. *Camden I Condominium Assoc., Inc. v. Dunkle,* 946 F.2d 768, 770 (11th Cir.1991). The district court "has great latitude in formulating attorney's fees awards subject only to the necessity of explaining its reasoning so that we can undertake our review." *McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1184 (11th Cir.1993) (internal quotation omitted).

> By definition ... under the abuse of discretion standard of review there will be occasions in which we affirm the district court even though we would have gone the other way had it been our call. That is how an abuse of discretion standard differs from a *de novo* standard of review. As we have stated previously, the abuse of discretion standard allows a range of choice for the district court, so long as that choice does not constitute a clear error of judgment.

*Purcell v. BankAtlantic Fin. Corp.,* 85 F.3d 1508, 1513 (11th Cir.1996) (citation omitted).

In considering a fee award in the class action context, the district court has a significant supervisory role. Federal Rule of Civil Procedure 23(e) mandates that a "class action shall not be dismissed or compromised without the approval of the court." *See also Evans v. Jeff D.,* 475 U.S. 717, 726, 106 S.Ct. 1531, 1537, 89 L.Ed.2d 747 (1986) ("Rule 23(e) wisely requires court approval of the terms of any settlement of a class action."). Upon reviewing the voluminous record in this case, we find no abuse of discretion by the district court and affirm the award of attorneys' fees.[4]

---

[4]Because we find no abuse of discretion by the district court in its award of fees and expenses, we need not address the ramifications of the "clear sailing" agreement on the defendants' ability to challenge the fee award in this case. We note that clear sailing agreements have been the subject of some controversy in the class action arena. In *Malchman v. Davis,* 761 F.2d 893 (2d Cir.1985), *abrogated on other grounds, Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997),the court upheld an attorneys' fee award from a settlement agreement that contained a clear sailing clause. The writing judge noted that while the district court judge should always be the ultimate determiner of the fee award, "where ... the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems ... that an

3

On March 31, 1997, the district court presided over a fairness hearing concerning the proposed Settlement Agreement. At that hearing, after noting the objections raised by the defendants, the district court proceeded to discuss the attorneys' fee award with reference to *Boeing Co. v. Van Gemert,* 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) and *Camden I. See* R132-1518-84-85. In *Boeing,* the Supreme Court rejected petitioner's argument that the attorneys' fee award could only be based on the portion of the common fund actually claimed by class members and not from the unclaimed portion of the fund. *See Boeing,* 444 U.S. at 477, 100 S.Ct. at 749. The Court found that "to claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, *whether or not they exercise it,* is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480, 100 S.Ct. at 750 (emphasis added). *Boeing,* as in the case at bar, involved the defendant's potential claim on undispersed portions of the fund, causing the Court to note that Boeing's "latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation." *Id.* at 482, 100 S.Ct. at 751.

In *Camden I,* we held that "attorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774. We further noted

---

agreement 'not to oppose' an application for fees up to a point is essential to the completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged." *Id.* at 905 n. 5. In contrast, a concurring panel member noted that clear sailing agreements had "adverse effects" in that they take away the advantages of the adversarial process and create the likelihood that plaintiff counsel will negotiate away something of value to the class in order to procure the defendant's agreement not to challenge the fee award. *Id.* at 907-08 (Newman, J., concurring). Significantly, the district court here made a factual finding that there had not been any collusion among the parties. *See* R132-1518-64 ("it should be noted that the settlement plainly is not collusive in any respect").

> Other courts have not been as suspicious of clear sailing agreements reached after arms-length negotiations. *See Skelton v. General Motors Corp.,* 860 F.2d 250, 259-60 (7th Cir.1988) (noting that a settlement agreement is a contract and when a party "accepted the benefits of the contract ... [h]e cannot obtain the *quid* of the settlement agreement and avoid the *quo* of foregoing his right to appeal."). We are satisfied that the district court here fulfilled its Rule 23 supervisory function and decline to address the clear sailing agreement.

that the "majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* Finally, we directed

district courts to view this range as a "benchmark" which "may be adjusted in accordance with the individual

circumstances of each case," using the factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488

F.2d 714 (5th Cir.1974), *abrogated on other grounds, Blanchard v. Bergeron,* 489 U.S. 87, 109 S.Ct. 939,

103 L.Ed.2d 67 (1989). *Id.* at 775.[5]

After determining that the benchmark in this case should be 30%, *see* R132-1518-87, the district court

proceeded to consider whether the benchmark should be adjusted up or down based on the circumstances of

the case as analyzed under the twelve factors outlined in *Johnson. Id.* at 86-93. The district court concluded

that all factors were either neutral or required an upward adjustment in the benchmark percentage. *Id.*

Following the directives of *Camden I,* the district court factored an additional upward adjustment for the time

taken to reach settlement through seven years of litigation and five months of trial. The district court further

found that the case served an unusual public policy by highlighting the potential for "boiler room" tactics in

the commodities industry. *Id.* at 94. The district court then concluded that "class counsel is entitled to a small

upward adjustment in the benchmark of 30%, and that the appropriate adjustment is to the percentage of the

fund requested by class counsel as its fee, that is, 33 1/3%, or $13,333,333." *Id.*

The defendants' primary argument seems to be that the attorneys' fee award was based on a

percentage of the total fund rather than the actual payments made to class members.[6] The district court,

however, considered the possibility that the actual payout would be less than the total fund generated for the

settlement and noted that

> after seven years the number of class members actually asserting claims will be significantly lower

---

[5]*Johnson* instructs that district court should consider twelve factors in determining attorneys' fee awards: (1) time and labor, (2) novelty and difficulty of the questions, (3) requisite skill, (4) preclusion of other employment, (5) customary fee, (6) fixed or contingent fee, (7) time limitations, (8) amount involved and results obtained, (9) experience, reputation and ability of attorneys, (10) "undesirability" of the case, (11) nature and length of professional relationship with client, and (12) award in similar cases. 488 F.2d at 717-19.

[6]The estimated actual payment to class members is $6,485,362.15. *See* R35-1563-13.

than the class membership. I can also anticipate that the number of class members who end up having approved claims, who will actually demand payment on their notes after five years similarly will decrease, so that the actual dollars paid out will be substantially less than $40 million.

R132-1518-91-92.[7]

Contrary to defendants' assertion, no case has held that a district court must consider only the actual

payout in determining attorneys' fees.[8] *Strong v. BellSouth Telecommunications, Inc.,* 137 F.3d 844 (5th

---

[7]Defendants' assertion to the contrary notwithstanding, the district court reiterated, in its denial of defendants' motion to amend the final order and judgment approving the settlement, that the "Court is, and was at the time the Final Judgment was entered, well aware that there is a distinction between the ratio of attorneys' fee to the value of the class members' recovery in a common fund settlement in circumstances where the entire fund is distributed to class members asserting claims on a *pro rata* basis as opposed to circumstances where, as here, the defendants were able to successfully negotiate for a reversion of any unclaimed portion of the fund." R35-1544-2.

> The district court also rejected defendants' suggestions that it was "misled" by the National Economic Research Associates (NERA) study on class actions offered by both parties in support of the settlement agreement, and that the NERA Study presented attorneys' fees as a percentage of the actual payout rather than of the total fund. The district court responded that:

> > [Defense counsel's argument] (1) conflicts with the position he took earlier in the case when he was seeking the Court's preliminary approval of the Stipulation of Settlement that the fee application specifically contemplated by the Stipulation of Settlement, i.e. $13,333,333 representing 33 and one third percent of the $40 million Settlement Fund, was reasonable and that its reasonableness was supported by his experience in other class actions and consistent with the conclusions contained in the NERA Study; (2) conflicts with the Defendants' express undertaking that they would not oppose Plaintiffs' fee application so long as it did not exceed 33 and one-third percent of the $40 million Settlement Fund; and (3) conflicts with the term "settlement value" as used in the NERA Study, the plain meaning of which is the gross amount of the settlement pursuant to the Final Judgment as stated in the Final Settlement Notice to class members. In fact, the Court's understanding of NERA's usage of the term "settlement value" has been confirmed to the undersigned by Todd S. Foster, a representative of NERA who was one of the authors of the NERA Study.

> R35-1544-4.

[8]In *Goodrich v. E.F. Hutton Group, Inc.,* No. 8279 (Del. Ch. Feb. 2, 1996), *aff'd,* 681 A.2d 1039 (Del.1996), the judge, in his discretion, chose to base the percentage of the attorney fee award on the actual payment to claimants. Unlike the case at bar, *Goodrich* did not involve a situation where each claimant had an "undisputed and mathematically ascertainable claim" to part of the judgment. *Id.* at 1048. Furthermore, *Goodrich* emphasized that the "award of attorneys' fee in a common fund case is committed to the sound discretion of the trial court." *Id.* at 1050 n. 12. The court further declined to adopt a mandatory methodology for determining attorneys' fees. *Id.* at 1050. The fact that the cases cited by the defendants emphasize that attorneys' fee awards are in the discretion of the district court and decline to adopt a strict method of calculation, illustrate that whether a district court judge considers the total fund or the actual payment will

6

Cir.1998), does not mandate that a district court must consider only the actual award made to the class. Rather, *Strong* held that it was not an abuse of discretion for a district court judge to consider the actual award paid out to the class in determining whether a fee application was reasonable. *Id.* at 852-53. The Fifth Circuit, in fact, noted that while the district court's request for information concerning the actual claims was "not the usual" course of action, it was not an abuse of discretion under the circumstances presented to the district court. *Id.* at 853. Additionally, unlike the case at bar, *Strong* never established a "common fund" from which money would be drawn. *See Strong,* 137 F.3d at 852 ("[N]o fund was established at all in this case."). In contrast, the parties here established that $40 million was the fund upon which the amount of the individual claimants' awards would be based. The district court here never made a determination that this amount was illusory. *Cf. id.* (finding that common fund figure was "phantom").

Moreover, in *Williams v. MGM-Pathe Communications Co.,* 129 F.3d 1026 (9th Cir.1997) (per curiam), a class action reversionary fund case, the Ninth Circuit held that the "district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar." *Id.* at 1027 (footnote omitted). The court found that the attorneys' fee award should have been based on a percentage of the total recovery fund, $4.5 million, even though the actual payout only totaled approximately $10,000. Interestingly, in addressing arguments similar to those presented by the defendants here, the court stated that "Defendants here knew, because it was in the settlement agreement, that the class attorneys would seek to recover fees based on the entire $4.5 million fund. The Defendants had some responsibility to negotiate at the outset for a smaller settlement fund if they wished to limit the fees." *Id.*[9] We also note, as the district court recognized, that a leading commentator on class actions

vary according to the circumstances of each case. Here, where the district court considered both the total fund and the possibility that the actual payment would be substantially lower, there is no abuse of discretion.

[9]While we fully agree that the district court has an independent supervisory duty to assess the appropriateness of the fee award apart from any agreement reached by plaintiff and defense counsel, *see Piambino v. Bailey,* 610 F.2d 1306, 1328 (5th Cir.1980) ("A district court is not bound by the agreement of the parties as to the amount of attorneys' fees."), we note that defense counsel's arguments about the "exorbitant and unprecedented fee Award," Brief for Defendants-Appellants, at 4, are in conflict with their

7

has agreed that fee awards may be based on the total available fund:

> When a lump sum has been recovered for a class, that sum represents the common fund benchmark on which a reasonable fee will be based. When, however, the defendant reserves the right to recapture any unclaimed portion of the common fund after class members have had an opportunity to make their claims against the fund, ... the question arises concerning whether the benchmark common fund amount for fee award purposes comprises only the amount claimed by class members or that amount potentially available to be claimed. In *Boeing Co. v. Van Gemert,* the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.

Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 14.03, at 14-14 (3d ed.1992).[10]

In addition to the district court's careful consideration of the *Johnson* factors and awareness that the actual claims made could be less than the gross settlement fund, our conclusion that the award is not an abuse of discretion is supported by the following observations. Unlike many other class actions, the total fund amount of $40 million was not illusory or meaningless. Each class claimant benefitted from having the total amount of the fund set at $40 million because the individual payment was based upon a percentage of the total fund. The amount of the total fund determined the amount of each class member's claim, regardless of the

---

earlier assertions to the district court. As the district court noted, at the time the settlement agreement was presented to the court, the defense counsel fully supported, as "well within the range of reasonable", R132-1518-42, an award of 33 1/3% of the total settlement fund. The district court further noted that both parties supported "a fee award of one-third of the $40 million settlement fund, which everyone at the time clearly understood to be approximately $13 million," *id.* at 34, and emphasized "that in these discussions both sides went to some lengths to convince me that a settlement fund consisting of $40 million, albeit comprised of $10 million in cash and the balance in notes, less a fee award of one-third of the gross amount of the settlement fund and reimbursement of counsel's expenses, would produce an exceptional benefit to the class members." *Id.* at 35. Additionally, no class members opposed the amount of the attorneys' fee award. *See id.* at 63 (only class member to oppose portion of settlement stipulation at fairness hearing "was just angry at the reversionary clause.").

[10]*See also In re Copley Pharmaceutical, Inc.,* 1 F.Supp.2d 1407 (D.Wyo.1998), where the district court approved, under *Boeing,* the payment of attorneys' fees from the gross settlement fund. "The first step in a percentage of the fund analysis is a determination of the value of the fund. While disputed by the parties in this case, the matter is settled by the explicit terms of the Agreement." *Id.* at 1412. The court further found that "this case involves a settlement negotiated at arms length, rather than a judgment. Under the terms of that settlement and its remittitur provisions, Defendant not only knew that class counsel would seek to recover fees based on the gross amount of the fund recovered (regardless of whether some part of that fund was not claimed), but also agreed to a mechanism and formula by which class counsel could do so. Thus Defendant cannot complain now that class counsel seek to do what the settlement agreement explicitly contemplates." *Id.* at 1416.

actual number of claims filed. In other words, as the district court explained:

> In relationship to the plan of allocation, the stipulation of settlement provides that each class member will recover from the net settlement fund in the same proportion that his or her losses bore to total customer losses. Therefore, the claim of any class member will not reduce or increase the recovery of any other class member except to the extent that the Court orders that bonuses be paid to the class representatives.

R132-1518-64. Defendants' counsel also noted that "each claimant's distribution does not depend on how many claims are submitted in this case." *Id.* at 145. The total fund awarded in the settlement, therefore, substantially and directly affected the amount that each claimant would eventually be awarded. The fact that there were a reduced number of claimants had no effect at all on the amount each class member received. That amount, rather, was determined by the total fund accrued. Negotiating a $40 million gross settlement fund, therefore, created a benefit on behalf of the entire class.[11]

Moreover, even if we were to accept defendants' argument about the amount on which attorneys' fees should be based, the reversionary nature of the settlement necessarily would mean that 90% of the reduction in attorneys' fees would accrue to the benefit of the defendant, in contrast to the mere 10% which would accrue to the class' interest.[12] Defense counsel's claimed interest in protecting the class thus, seen in this light, strains credulity. Furthermore, while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison. The plaintiffs' counsels' lodestar calculation would bring a fee of $12,663,897. *See* R32-1480, at ¶ 9. The $13.3 million awarded by the district court then would have only a modest lodestar multiplier of 1.05%.

---

[11]Defendants argue that the court should consider the policy behind the recently-enacted Private Securities Litigation Reform Act, ("PSLRA"), Pub.L. No. 106-67, 109 Stat. 737, 758, § 108, which specifies that attorneys' fee requests must be considered in light of the total benefit to plaintiffs. We decline to apply the policy of the PSLRA because it does not apply to actions commenced before and pending upon its effective date, December 22, 1995. Furthermore, it is likely that the PSLRA does not apply to commodities actions.

[12]Defendants calculate that the attorneys' fees should be $3,627,526, as opposed to the $13.3 million awarded by the district court. Brief of Defendants-Appellants, at 47 & n. 17. Of the additional $9.7 million that would accrue to the settlement fund from this calculated reduction in attorneys' fees, only $1,000,000 would be redistributed to the 20,000 potential claimants, while $8.7 million would revert to the defendants. *Id.*

9

Finally, the abuse of discretion standard has particular meaning in lawsuits that are as lengthy and contentious as the case at bar. This litigation has generated 134 volumes of record. Forty-eight witnesses testified at the trial alone. The district court is in the unique position to evaluate the labors of both parties in this litigation. Nothing in this opinion precludes a district court judge in a different case from basing the attorneys' fee award on the actual class recovery, or on the gross settlement figure. The factors the district court considers will vary according to the circumstances presented in each case. When we can discern no clear error of judgment by the court, however, there is no abuse of discretion.

## II. EXPENSE AWARD

The defendants also challenge the district court's award of $2,400,204 in expenses to the plaintiffs' class counsel. R35-1543-2. Plaintiffs' lead counsel originally requested an expense award of $2,586,611.60, and co-counsel, $77,482.97, totaling $2,664,094.57. *See* R132-1518-94. While observing that *Camden I* did not provide guidance for determination of expenses, the district court recognized that "there is a requirement ... on the part of class counsel to establish that the costs are reasonable and necessary ... to the prosecution of the case." R132-1518-96. *See also In re "Agent Orange" Prod. Liab. Litig.,* 611 F.Supp. 1296, 1314 (E.D.N.Y.1985), *modified on other grounds,* 818 F.2d 226 (2d Cir.1987) ("Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class."). The district court further recognized a "responsibility to scrutinize the costs for which reimbursement is requested in order to ensure that class counsel is not obtaining a secret or unintended profit." R132-1518-97.

After a March 31, 1997 hearing, the district court determined that lead counsel for the plaintiff class had failed to substantiate its cost application to the extent necessary for the court to make a determination as to whether the expenses were reasonable. From the co-counsel's costs, the district court disallowed "legal services" and "postal costs" and cut reproduction costs from 25to 10per page. *See* R132-1518-95.

At an April 25, 1997, status conference, the district court made final expense determinations in light

of plaintiffs' counsel's supplements to the expense request, such as "additional computer print-outs, invoices and other documents, as well as affidavits explaining the law firm's billing procedures for out-of-pocket costs, and affidavits addressing the reasonableness of certain categories of expenses." R35-1542-2-3. The record reveals that the district court conducted an exhaustive and detailed examination of each of plaintiff's counsel's claimed expenses. *See* R133-1535-4-16.[13]

We are convinced that the district court did not "rubber stamp" the submissions of the plaintiffs' class counsel for expenses, but rather required more specific documentation for costs, considered each type of expense separately, and eventually disallowed over $200,000 of the request. Rarely do class action litigations proceed to trial. The expense request in this case reflects seven years of litigation and a five-month trial. We see no abuse of discretion in the district court's expense award.

## III. ASSIGNABILITY OF FEE AWARD

Under the original stipulation of settlement, plaintiffs' class counsel was to receive the entire sum of attorneys' fees and expenses in cash. The district court questioned this arrangement because the plaintiff class members were only to receive 25% of their claim in cash and the remaining 75% in the form of promissory notes. Responding to the district court's concern, plaintiffs' class counsel agreed to accept 25% cash and 75% in deferred obligation for their fee award. The terms of the deferred obligation are the source of the present controversy.

Defendants challenge the district court's determination that the promissory notes given to plaintiffs' class counsel are assignable. The stipulation of settlement provides that the portion of attorneys' fees "not paid in cash out of the cash portion of the Settlement Fund will be paid by the Settlement Administrator if, as and when the Settlement Administrator receives payments with respect to the Master Promissory Note, and the deferred portion of these fees and expenses will earn interest at the same rate and be paid at the same time

---

[13] Among many other considerations, the district court eliminated costs for local meals, cabs, airline ticket upgrades, and other miscellaneous travel charges, *id.* at 6; approved telephone charges, *id.* at 4; and disallowed lobbyist fees and charges for a jury selection psychiatrist, *id.* at 9.

11

as interest is earned and paid on the Master Promissory Note." R31-1371-55-56. Exhibit A to the stipulation agreement, a proposed order with respect to the class action settlement, signed by counsel for both parties, provides that "Counsel will request that the payment of fees and expenses out of the Settlement Fund be made in cash to the extent available. Any fee awarded which is not paid in cash shall be paid in the form of an obligation having the same terms and bearing the same interest rate as the Promissory Notes, as defined in the Stipulation." R31-1371, Exh. A, at 11. The stipulation provided that promissory notes given to class claimants were freely assignable. R31-1371-20. Under the terms of the proposed order, then, the deferred attorney's fees would be on equal terms with the class claimants' promissory notes and, therefore, assignable. Defendants argue that the language in the proposed order is a material alteration of the language in the stipulation of settlement. The proposed order, however, was attached to the stipulation agreement as an exhibit. Under the terms of the stipulation agreement, "[a]ll of the Exhibits to the Stipulation ... are fully incorporated herein by this reference." *Id.* at 66, § 10.5.

Furthermore, as the district court noted, "[n]owhere in the January 31, 1997 Order or the Stipulation of Settlement is it specifically provided that the deferred obligation to class counsel shall not be assignable or transferable." R33-1515-2-3. As a result, the more detailed language of the proposed order does not materially alter the silence of the stipulation of settlement. Moreover, under Florida law, in accordance with which the settlement agreement is to be governed, "[g]enerally, all contractual rights are assignable unless the contract prohibits assignment, the contract involves obligations of a personal nature, or public policy dictates against assignment." *L.V. McClendon Kennels, Inc. v. Investment Corp.,* 490 So.2d 1374, 1375 (Fla.Dist.Ct.App.1986). Since there is no language in the stipulation of settlement or proposed order prohibiting assignment, we find that the district court properly determined the notes are assignable.

## IV. CONCLUSION

We find that district court did not abuse its discretion in awarding attorneys' fees and expenses to plaintiffs' class counsel. We also affirm the district court's order that the portion of attorneys' fee to be paid

12

in promissory notes is assignable. Nothing in this opinion should be interpreted to minimize the importance of the active supervisory role of the district court when reviewing class action settlements, particularly those involving the so-called "clear sailing" agreements. The district court here, however, did not abuse its discretion in making an attorneys' fee award. The court considered, and applied, all the relevant Eleventh Circuit precedent. Defense counsel, having reaped the benefits of their bargain in settling the class action suit, cannot expect the court to renegotiate on their behalf the terms of an agreement concluded after arms-length negotiations.

AFFIRMED.