**Jack Cooper PINTO, Nicola Prazeres, Octavio Reveles, individually, and on behalf of all others similarly situated, Plaintiffs,**

v.

**PRINCESS CRUISE LINES, LTD d/b/a Princess Cruises, Defendant.**

No. 05–23087 CIV.

United States District Court, S.D. Florida.

Feb. 16, 2007.

Julio Jesus Ayala, Jr., Miami, FL, Lead Attorney, Christopher Fitzgerald Branch, Thomas A. Tucker Ronzetti, Kozyak Tropin & Throckmorton, Lead Attorney, Coral Gables, FL, for Plaintiffs.

Rachel Sherry Cohen, Mase & Lara PA, Miami, FL, Lead Attorney, Jeffrey Maltzman Foreman PA, Lead Attorney, Miami, FL, Darren Wayne Friedman, Maltzman Foreman PA, Miami, FL, Randy Scott Ginsberg, Randy S. Ginsberg, Coral Gables, FL, Lead Attorney, Catherine J. MacIvor, Maltzman Foreman PA, Lead Attorney, Jeffrey Bradford Maltzman, Maltzman Foreman PA, Lead Attorney, Miami, FL, for Defendants.

Patrick Russell, Russell Law Offices, Miami, FL, Lead Attorney, for Intervenor Plaintiff.

*ORDER GRANTING CLASS COUNSEL'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND PAYMENT OF SERVICE AWARDS*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Class Counsel's Motion for Attorneys' Fees and Expenses and Payment of Service Awards [D.E. 936], filed on January 19, 2007. In the Motion, Class Counsel request that the Court award 30% of the fund, $1,275,000, for their fees and expenses, and award the three representatives $7,500 each as service awards, plus pro rata interest. No Class member has objected to the Motion. Moreover, Class Counsel have stipulated in their papers and at the Final Fairness Hearing on February 15, 2007 that the proposed service awards shall be paid, subject to the Court's approval, from the fee award rather than the Class's common fund. Having reviewed the record and held the Final Fairness Hearing on February 15, 2007, and being fully advised of the premises, the Court grants the Motion for the reasons provided below.

## I. BACKGROUND

In this litigation, Plaintiffs allege that Princess Cruise Lines ("Princess") failed to pay its current and former seafaring employees adequate wages or other compensation owed under contract and law. Plaintiffs' claims arise from Class Counsel's investigations indicating that Princess failed to adequately record time and pay full wages owed, including all overtime wages.

### A. The Course of Proceedings

On March 7, 2005, former employees of Carnival Cruise Lines ("Carnival") filed a class action suit against Carnival styled *Stoycheva v. Carnival Corporation*, 05–20644–CIV–Cooke (S.D.Fla.), based on allegations that they had been refused overtime and minimum wages, in violation of the Seaman's Wage Act, 46 U.S.C.App. § 10313(f) and (g). During the course of that litigation, Class Counsel became aware that employees of Princess had similar allegations. Accordingly, Class Counsel began to investigate allegations that

Princess had failed to pay overtime wages to its seafaring employees.

On November 28, 2005, the Complaint was filed in this action, alleging that Princess had failed to pay minimum wages as a practice. The legal theories were similar to those asserted in the *Stoycheva* case, and had been asserted by a class of Norwegian Cruise Line employees in *Bolanos v. Norwegian Cruise Lines, Ltd.*, 212 F.R.D. 144 (S.D.N.Y.2002).

On January 27, 2006, Princess moved to dismiss the Complaint, asserting several arguments, including that a choice of forum clause in its employment agreements barred Plaintiffs' suit. Plaintiffs filed a Memorandum in Opposition [D.E. 24] and Princess filed a Reply [D.E. 34]. Following a hearing on the Motion to Dismiss on March 30, 2006, the Court granted the Motion in part and denied it in part, dismissing Plaintiffs' breach of contract claims based on the choice of forum clause [D.E. 36]. Plaintiffs subsequently filed their First Amended Complaint [D.E. 37]. Princess then answered [D.E. 42]. In its Answer, Princess asserted defenses including release and res judicata based upon a prior settlement in *Gall v. Princess Cruise Lines, Ltd.*, Case No. 04–21966–Civ–Seitz.

Class Representative Plaintiffs' counsel took the deposition of Princess's corporate representative in Los Angeles. Then, on June 22, 2006, Plaintiffs moved for partial summary judgment on the defenses of release and res judicata based on *Gall* [D.E. 54]. Princess responded and filed its own cross motion for summary judgment [D.E. 59].

On August 9, 2006, Plaintiffs moved for class certification [D.E. 65]. The court subsequently set oral argument on the outstanding motions for summary judgment and motion for class certification for September 26, 2006 [D.E. 76]. Princess filed a Motion to Disqualify Class Representative Plaintiff Nicholas Vieira as well as Class Counsel Tucker Ronzetti and Julio Ayala [D.E. 84].

In responding to the motion for class certification, Princess also filed 381 supporting affidavits [D.E. 116–878]. Princess filed a response to the Motion for Class Certification [D.E. 882]. Plaintiffs filed an emergency motion to strike the 381 affidavits [D.E. 885]. After a telephonic hearing, the Court granted partial relief on that motion, allowing discovery regarding the affidavits [D.E. 889]. The Court also granted the Plaintiffs' motion to compel [D.E. 891].

Meanwhile, the parties had been discussing potential methods of settling the case. On September 25, 2006, the parties conducted an all-day mediation settlement before the Honorable Herb Stettin. Negotiations continued into the night.

On September 26, 2006, the date that had been set for the oral argument on class certification, the parties announced to the Court that they had reached a settlement, having agreed upon a term sheet. The Court subsequently dismissed all outstanding motions as moot [D.E. 907].

On October 23, 2006, the parties filed a Joint Motion for Preliminary Approval of Class Action Settlement and other relief [D.E. 917]. The Court subsequently issued an order granting preliminary approval and certifying the class for settlement purposes [D.E. 923].

## B. The Settlement

The parties' settlement is comprised of two parts, including changes to compensation practices by Princess and a settlement fund of $4,250,000 to satisfy valid claims. Attorneys' fees and costs are capped at 30% of the fund ($1,275,000). Princess has also assumed the burden of notice and claims processing, with the supervision of Class Counsel.

### 1. *Compensation Practices*

The Settlement Agreement requires changes to Princess' compensation practices. These changes are designed to eliminate improper practices relating to the payment of wages by Princess. With regard to its policies and procedures, Princess has agreed to the following:

a. ***Modifications to Princess's Payment System.*** Princess will implement a system to record each employee's actual work time and provide employees the records of that time. (Settlement Agreement [D.E. 917, 927] ¶ 11.A).

b. ***Grievance and Arbitration.*** Employees will have a grievance and arbitration process allowing them up to 180 days to claim that they have not received adequate wages. Employees disappointed with the grievance process may go to an independent arbitrator for a binding decision. (Settlement Agreement ¶ 12).

### 2. *The Settlement Fund*

Under the terms of the Settlement Agreement, Princess will pay $4,250,000 into a Settlement Fund to satisfy valid claims submitted by its current and former employees. Each claimant who files a valid and timely proof of claim will be entitled to be paid an amount equal to (1) the number of months the claimant worked from November 28, 2001, through November 24, 2006 (counting only those months during contracts where the crewmember certifies that he or she worked excess overtime for which he or she was not paid and counting only those months during contracts which ended with the crewmember leaving the vessel in a United States port), divided by (2) the total number of months worked by all class members during that same period, as determined by Princess' position headcounts, multiplied by (3) the Net Settlement Fund (the gross settlement fund less any costs, attorneys' fees or incentive fees[1] which may be awarded by the Court); provided, however, that (1) if the claimant was a member of the *Gall* class and did not opt out but did not file a claim and receive a payment, his or her total payment shall be reduced by 60%; or (2) if the claimant was a member of the *Gall* class and received a monetary payment in that action, his or her total payment shall be reduced by 75%. Any undistributed portion of the settlement fund will revert to Princess. Interest earned on the settlement fund will be distributed pro rata, thereby increasing the actual settlement proceeds available for the class.

### 3. *Right to Opt Out*

The Settlement includes the right to opt out. Any class member may elect not to participate and may pursue claims through other means.

### 4. *Attorneys' Fees and Expenses*

Princess has agreed to pay attorneys' fees and expenses, as approved and determined by the Court, of up to 30% of the fund ($1,275,000).

---

1. By stipulation between the parties, Plaintiffs have withdrawn their request that class representative incentive fees be paid out of the gross settlement fund and Princess has withdrawn its opposition to payment of incentive fees out of the class fund as moot. Plaintiffs' attorneys instead seek permission of the Court to pay the requested $7,500 incentive fees to each of the three named class representatives out of the attorneys' fees that the Court may award to Plaintiffs' counsel. Because this request does not impact the total amount of attorneys' fees that would be awarded to Class Counsel, and does not diminish the settlement fund for other class members, Princess stipulates that it has no position with regard to Class Counsel's request. The Court will address this request in a separate order.

### C. Class Counsel's Reasoning Regarding Settlement

Class Counsel settled this case following substantial litigation and arm's length negotiations. Through those negotiations, Class Counsel were able to achieve changes to Princess' practices that were not clearly available through litigation. These changes to practices going forward should allow seafarers to know their rights and enforce them without the necessity of class action litigation. The seafarers also achieved a significant back pay award.

At the time of settlement, the risks associated with going forward were significant, as established by the pending motions. Recent rulings in the Southern District of Florida, including the denial of certification in the "Risperdal" case of *Charles v. Janssen Pharmaceutical Products*, Case No. 04–22287–Civ–Altonaga (S.D. Fla.) and *Conigliaro v. Norwegian Cruise Line, Ltd.*, Case No. 05–21584–Civ–Altonaga (S.D.Fla.), indicated class certification would be difficult to achieve.

Class Counsel believe the Settlement compared favorably to the one approved by the Court in *Borcea v. Carnival Corporation*, 238 F.R.D. 664 (S.D.Fla.2006), which involved the same Class Counsel and Princess' parent company. In *Borcea*, similar claims were settled with a class of over 40,000 seafarers and a fund of $6.25 million. Here, the Class is roughly half the size, while the claims fund is $4.25 million. While it is true that the claims formula is modified by a reduction from the benefits of the *Gall* case, Princess was able to present defenses based on *Gall* that were unavailable in *Borcea*. Princess also presented class certification arguments unavailable in *Borcea*, and so refused a minimum payout provision. Both cases have similar injunctive relief provisions, though this Settlement is somewhat better in that it allows a substantially longer period (180 days) for the submission of grievances.

The Settlement Agreement is plainly the result of hard-fought litigation and arm's length negotiations. Class Counsel pressed this matter as zealously and firmly as possible. While Class Counsel felt strongly that the case had merit, the risk of going forward was substantial.

## II. DISCUSSION

■ Lawyers who recover a "common fund" are entitled to reasonable attorneys' fees from the fund they created. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). One rationale for such awards is that "persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched." *Id.* at 478, 100 S.Ct. 745.

The common fund approach is also grounded on a policy of encouraging counsel to act as "private attorneys general" to vindicate the rights of class members, most of whom have small individual claims:

> [C]ourts also have acknowledged the economic reality that in order to encourage "private attorney general" class actions brought to enforce ... laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. National Healthcare, Inc.*, 684 F.Supp. 679, 687 (M.D.Ala.1988); *see also In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 348–49 (N.D.Ga. 1993). Moreover, adequate compensation promotes the availability of counsel for plaintiffs. *Muehler v. Land O'Lakes, Inc.*, 617 F.Supp. 1370, 1375–76 (D.Minn.1985) (awarding requested 35% fee).

■ The proper manner to calculate attorneys' fees is to identify the fund created for the benefit of the class and to award Class Counsel a reasonable percentage of that fund as an attorneys' fee. "[I]n this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir.1991); *see also In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1333 (S.D.Fla.2001). The percentage applies to the total fund created, even where the actual payout following the claims process is lower. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999); *Williams v. MGM–Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir.1997) (discussed in *Waters;* approving a fee percentage on the $4.5 million fund although the payout was $10,000).

The Eleventh Circuit has also observed that "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I*, 946 F.2d at 774. However, "district courts are beginning to view the median of this 20% to 30% range, i.e., 25%, as a 'bench mark' percentage fee award which may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775; *see also Waters*, 190 F.3d at 1295 (approving fee award where the district court determined that the benchmark should be 30% and then adjusting the fee award higher based on the circumstances of the case). Finally, the *Camden I* court indicated that the factors used to determine an appropriate percentage are those set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), as well as the time required to reach a settlement, the existence of substantial objections from class members, the existence of non-

monetary benefits of the settlement, and the economics involved in prosecuting a class action. *Camden I*, 946 F.2d at 775.

As explained below, the Court finds the factors set forth in *Camden I* support the full award of the requested fees and expenses in this case.

## A. The Contingent Nature of the Fee, the Financial Burden Carried by Class Counsel, and the Economics of Prosecuting a Class Action Support the 30% Award

■ A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. Cases recognize that attorneys' risk is " 'perhaps the foremost' factor" in determining an appropriate fee award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir.2000) (citation omitted); *accord Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result."); *see also Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D.Fla.1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F.Supp. 755, 759 (N.D.Ga.), *modified*, 803 F.2d 1135 (11th Cir.1986); *York v. Alabama State Bd. of Educ.*, 631 F.Supp. 78, 86 (M.D.Ala.1986).

In *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D.Fla.1988), *aff'd*, 899 F.2d 21 (11th Cir.1990), the court noted that:

Generally, the contingency retainment must be promoted to assure representa-

tion when a person could not otherwise afford the services of a lawyer. . . .

A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

(citations omitted). *See also In re Sunbeam*, 176 F.Supp.2d at 1335; *Ressler v. Jacobson*, 149 F.R.D. 651, 656–57 (M.D.Fla.1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award. . . . In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel received little or no fee.").

These factors weigh in favor of awarding Class Counsel 30% of the fund. Class Counsel have received no compensation during the course of this litigation and have also incurred significant expenses in litigating on behalf of the Class, none of which would have been recovered if the case had not been successfully concluded. From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the Class and hence no compensation. Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. Although

Class Counsel have successfully concluded the litigation, this result was not foreseeable at the outset. The relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight.[2] The financial risks borne by Class Counsel fully support the appropriateness of the fee requested.

### B. The Requested Fees Reflect the Market Rate in Other Complex, Contingent Litigation

The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients. Individual clients often recognize that they lack the expertise or time to monitor their attorneys' performance. Thus, they select a compensation formula—the contingent fee—that automatically aligns their attorneys' interest with their own. Courts are encouraged to look to the private marketplace in setting a percentage fee:

The judicial task might be simplified if the judge and the lawyers bent their efforts on finding out what the market in fact pays not for the individual hours but for the ensemble of services rendered in a case of this character. This was a contingent fee suit that yielded a recovery for the "clients" (the class members) of $45 million. The class counsel are entitled to the fee they would have received had they handled a similar suit on

---

**2.** Courts have made it clear that if, by reason of their professional skill and determined efforts, plaintiffs' counsel are ultimately able to secure a settlement, that fact is not relevant to an assessment of the degree of risk that they assumed at the time of filing the litigation. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir.1991) (contingent multiplier "is designed to reflect the riskiness of the case at the outset"); *Skelton v. Gen. Motors Corp.*,

860 F.2d 250, 258 (7th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989) ("The point at which plaintiffs settle with defendants ... is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them."); *Lindy Bros. Builders, Inc. v. Amer. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112 (3d Cir.1976).

a contingent fee basis, with a similar outcome, for a paying client. Suppose a large investor had sued Continental for securities fraud and won $45 million. What would its lawyers have gotten pursuant to their contingent fee contract? *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir.1992). *See also In re RJR Nabisco Sec. Litig.*, [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,984, at 94,268 (S.D.N.Y.1973) ("What should govern such [fee] awards is not the essentially whimsical view of a judge, or even a panel of judges, as to how much is enough in a particular case, but what the market pays in similar cases.").

In private litigation, attorneys regularly contract for contingent fees between 30% and 40% directly with their clients. (*See* Engel Aff. [D.E. 937] ¶ 19). *Phemister v. Harcourt Brace Jovanovich, Inc.*, 1984 WL 21981, 1984–82 Trade Cas. (CCH) ¶ 66,234, at 66,995 (N.D.Ill.1984) ("Contingent fee arrangements in non-class action damage lawsuits are the simple method of paying the attorney a percentage of what is recovered for the client. The more the recovery, the more the fee. The percentages agreed on vary, with one-third being particularly common."); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir.1986) (observing that "40% is the customary fee in tort litigation" and noting, with approval, contract providing for one-third contingent fee if litigation settled prior to trial). These percentages are the prevailing market rates throughout the United States for contingent representation.

In addition, National Economic Research Associates, an economics consulting firm, conducted surveys of fee awards in class actions in 1995 and 1996. Using data from 433 class actions, the study reports the following: "Regardless of case size, *fees average approximately 32 percent of the settlement.*" (emphasis added). Denise N. Martin, Vinita M. Juneja, Toddy S. Foster, Frederick C. Dunbar, *Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions?* at 12–13 (NERA Nov. 1996) (hereinafter "*Recent Trends IV*"). Another study released in 1996 focused on class actions in four federal district courts: the Southern District of Florida, the Northern District of California, the Eastern District of Pennsylvania, and the Northern District of Illinois. The Federal Judicial Center Study reported findings very similar to the NERA study: "Median rates ranged from 27% to 30%. Most fee awards in the study were between 20% and 40% of the gross monetary settlement." Thomas E. Willging, Laural L. Hooper, and Robert J. Niemic, *Empirical Study of Class Actions in Four Federal District Courts: Final Report to the Advisory Committee on Civil Rules* at 69 (Federal Judicial Center 1996).

In making a determination of what constitutes a fair percentage fee, the Court is guided by such awards. As the Eleventh Circuit stated in *Camden I:* "The majority of common fund fee awards fall between 20% to 30% of the fund." *Id.* at 774 (citing 1 Herbert B. Newberg, *Attorney Fee Awards* 2.08, at 51 (1986)). The court went on to note: "an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Camden I*, 946 F.2d at 774–75. *See also Ressler*, 149 F.R.D. at 655 (reviewing fee awards in similar case citing, among other cases); *Zinman v. Aemco Corp.*, 1978 WL 5686, [1978 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 96,-325 (E.D.Pa.1978) (fee equal to 50% of recovery); *Howes v. Atkins*, 668 F.Supp. 1021 (E.D.Ky.1987) (fee equal to 40% of recovery); *Van Gemert v. Boeing Co.*, 516 F.Supp. 412 (S.D.N.Y.1981) (fee equal to 36.2%); *In re Franklin Nat'l Bank Sec. Litig.*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 97,571 (E.D.N.Y.1980) (fee equal to 34%); *Bello v. Integrated Res., Inc.*, [1990–1991 Transfer Binder] Fed.

Sec. L. Rep. (CCH) ¶ 95,731, at 98,471 (S.D.N.Y.1990) (holding that the common range· of fees is 20–50 percent). Many recent decisions in this Circuit have awarded attorneys' fees in the percentage sought here, further confirming the fairness and reasonableness of the requested fee.[3]

The 30% fee requested in this case is thus well in line with the bulk of the fee awards in class action litigation.

## C. The Novelty and Difficulty of the Questions At Issue

This case presents novel questions of law, and complex issues of fact. (*See* Clasby Aff. [D.E. 937] ¶¶ 8–12). Class action matters are generally complex, but this one is particularly so. Only two prior reported decisions address Seaman's Wage Act claims in the class context. Underlying those claims are issues of choice of law, law of the flag, and foreign law. Factually, the claims involved assembling the common issues of workers in many positions. Beyond that were the many issues Princess raised, including res judicata and release in the class context. The voluminous papers of the case themselves testify that this was no simple piece of litigation.

## D. The Skill, Experience and Reputation of Class Counsel

Class Counsel have extensive experience in complex and maritime litigation. To litigate a case such as this requires counsel highly trained in class action matters and in the specialized maritime issues the case presents. The skill of counsel is commensurate with the novelty and complexity of the issues in this case.

## E. The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("critical factor is the degree of success obtained"); *see also King Res.,* 420 F.Supp. at 630 ("the amount of the recovery, and end result achieved are of primary importance, for these are the true benefit to the client"); *Behrens v. Wometco Enterprises, Inc.,* 118 F.R.D. 534, 547–48 (S.D.Fla.1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."), *aff'd,* 899 F.2d 21 (11th Cir.1990).

The results achieved in the case fully support the requested fee. The $4.25 million common fund is an excellent result, especially considering the *actual* damages at issue, as opposed to the penalty wages.

Moreover, when determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts usually consider not only the compensatory relief, but also the economic value of any prospective injunctive relief

---

3. *See, e.g., Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir.1999) (awarding 33 1/3%); *In re Sunbeam Sec. Litig.,* 176 F.Supp.2d 1323 (S.D.Fla.2001) (awarding 25%); *Diaz v. Hillsborough County Hosp. Auth.,* 2000 WL 1682918 (M.D.Fla. Aug.7, 2000) (awarding 30%); *see also Tapken v. Brown,* Case No. 90–0691–CIV, 1992 WL 178984, Fed. Sec. L. Rep. P 96805 (S.D.Fla. 1995) (awarding 33%); *In re Int'l Recovery Corp. Sec. Litig.,* Case No. 92–1474–CIV (S.D.Fla.1994) (fee award represented 30% of class benefit); *In re Sound Advice, Inc. Sec. Litig.,* Case No. 92–6457 (S.D.Fla.1994) (awarding 30%); *In re Belmac Corp. Sec. Litig.,* Case No. 92–1814–CIV–T–23–(C) (M.D.Fla.1994) (awarding 31%); *Holloway v. Chapnick,* Consol. Case No. 89–6572–CIV–Paine (S.D.Fla.1994) (awarding 30%); *In re Perfumania, Inc. Sec. Litig.,* Case No. 92–1490–CIV–Marcus (S.D.Fla.1993) (awarding 30%); *In re Royce Lab., Inc. Sec. Litig.,* Case No. 92–0923–CIV–Moore (S.D.Fla.1993) (awarding 30%); *Kaser v. Swann,* Case No. 90–607–CIV–Orl–3A18 (M.D.Fla.1993) (awarding 30%); *In re Home Shopping Network Sec. Litig.,* Case No. 87–428–T–13(A) (M.D.Fla.1991) (awarding 33%).

obtained for the class. *See, e.g., Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir. 2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.") (internal quotation and citation omitted); *Sheppard v. Consol. Edison Co. of New York, Inc.,* 2002 WL 2003206, at *7 (E.D.N.Y. Aug.1, 2002) (in valuing total settlement for percentage-based attorneys' fee award, court included $6.745 million in monetary relief and "an estimated $5 million in non-monetary, injunctive relief"); *Steiner v. Williams,* 2001 WL 604035, at *4 (S.D.N.Y. May 31, 2001) ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit.").

In addition to a monetary recovery, important injunctive relief has been obtained for the Class. The Settlement Agreement requires Princess to record actual work time, to provide seafarers their time records upon request at reasonable intervals, and to submit to a grievance and arbitration procedure to address compensation disputes. This injunctive relief should empower Princess' workers so this sort of class litigation will no longer be necessary. That relief should benefit the Class substantially.

## F. The Time and Labor of Class Counsel

Class Counsel have expended over 3,300 hours investigating the allegations, reviewing documents, interviewing relevant witnesses, and negotiating and documenting this settlement. Class Counsel's efforts are more fully detailed in their declarations. Their work has been substantial.

## G. The Reaction of the Class

A small number of objections indicates the support of the Class. *See Stoetzner v. United States Steel Corp.,* 897 F.2d 115, 118–19 (3d Cir.1990) (concluding that when "only" 29 members of a 281 person class (*i.e.,* 10% of the class) objected, the response of the class as a whole "strongly favors [the] settlement"); *Elkins v. Equitable Life Ins. of Iowa,* No. CIVA96–296–CIV–7–17B, 1998 WL 133741, at *28 (M.D.Fla. Jan.27, 1998) ("[t]here have been only six objections received from a Class of approximately 109,000 policy owners, which is a *de minimus* number" relative to the size of the class); *Cotton v. Hinton,* 559 F.2d 1326, 1333 (5th Cir.1977) (settlement approval affirmed despite objections by half of the current employee class). Here, none of the over 18,000 Class members has objected to Class Counsel's fee request. That this sizeable class did not give rise to a single objection on the fees request further justifies the full award.

## H. The Requested Fee is Also Reasonable When Cross–Checked Against the "Lodestar" Approach

Some courts use the lodestar method as a cross-check of the percentage of the fund approach. *See In re Sunbeam,* 176 F.Supp.2d at 1336 (citing *Ressler,* 149 F.R.D. at 653 n. 4). Applied here, the lodestar method shows that the fee request here easily passes muster. At the time they filed their Motion, Class Counsel had expended 3,336.1 hours on the case, amounting to a lodestar of $1,063,215.50.[4] Counsel have spent over $56,000 in out-of-pocket expenses, so that their fee amounts

---

4. Since filing their Motion for Fees, Class Counsel expended further time regarding administration issues, including a corporate representative deposition and a status hearing before the Court, so their lodestar has increased.

to a 1.2 multiplier for purposes of a lodestar analysis.

If the lodestar approach were applied, this case would justify a significant multiplier. In a pre-*Camden I* case, the Court performed both methods of analysis and gathered cases on the range of fee awards under either method and noted that lodestar multiples "in large and complicated class actions" range from 2.26 to 4.5, while "three appears to be the average." *Behrens*, 118 F.R.D. at 549. In many cases, including cases in this jurisdiction, multiples much higher than three have been approved. *See, e.g., Weiss v. Mercedes–Benz of N. Amer., Inc.*, 899 F.Supp. 1297 (D.N.J.1995) (multiple of 9.3 times lodestar); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138, Fed. Sec. L. Rep. (CCH) ¶ 96,984 (S.D.N.Y.1992) (multiple of 6 times lodestar); *Cosgrove v. Sullivan*, 759 F.Supp. 166 (S.D.N.Y.1991) (multiple of 8.74); *Glendora Comm. Redevelopment Agency v. Demeter*, 155 Cal.App.3d 465, 202 Cal.Rptr. 389 (Cal.Ct.App.1984) (multiple of 12 times lodestar); *Grimshawe v. New York Life Ins. Co.*, Case No. 96–0746–Civ–Nesbitt (S.D.Fla.) (percentage-based fee award equivalent to a multiple of 8.5). Considering that a significant multiplier would surely be justified in this case, Class Counsel's fee request, which entails a multiplier less than two, satisfies the cross check using the lodestar method.

## I. Service Awards of $7,500 Are Appropriate

■ The Court approves service awards in the amount of $7,500 for the three Representative Plaintiffs. The mailed and published notices advised class members that Representative Plaintiffs' Counsel would apply for service awards of $7,500, and no class members have objected to this reasonable request.

In instituting this litigation, the Representative Plaintiffs have acted as private attorneys general seeking a remedy for what appeared to be a public wrong. It is well recognized that private class action suits are a primary weapon in the enforcement of laws designed for the protection of the public. In *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir.1970), the United States Court of Appeals for the Third Circuit recognized that "the effectiveness of the securities laws may depend in large measure on the application of the class action device." *Accord Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 695 (E.D.Pa.1977). Approval of these awards is warranted as a matter of policy and is appropriate under applicable precedents.

Under such circumstances, Courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1218–19 (S.D.Fla.2006); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D.Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27 (E.D.Pa.1985) (incentive awards of $20,000 to each of two plaintiffs); *In re REVCO Sec. Litig., Arsam Co. v. Salomon Bros., Inc.*, 1992 WL 118800, 1992 U.S. Dist. LEXIS 7852 (N.D.Ohio May 5, 1992) ($200,000 to the named plaintiff); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D.Ohio 1991) ($50,000 to each class representative, aggregate award of $300,000). Class Counsel have agreed that the service awards will be provided from their fee award, so the class's net fund is not impacted, and Princess does not object to the award on that basis.

## III. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Class Counsel's Motion for Attorneys'

Fees and Expenses and Payment of Service Awards [D.E. 936] is **GRANTED.**

**DONE AND ORDERED.**